IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WILLIAM HADLEY and WENDY
HADLEY,

      Plaintiffs,

v.

BANK OF AMERICA, N.A., et al.,

      Defendants.

CIVIL ACTION NO.
1:17-CV-1522-TWT-LTW

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This case is before the Court on (1) Defendants Selene Finance L.P. and U.S. Bank, N.A. as Trustee for BCAT 2016-18TT's Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 30); (2) Defendant McCalla Raymer Leibert Pierce, LLC's Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 31); and (3) Defendants Bank of America, N.A. and BOFA Merrill Lynch Asset Holdings, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 32). For the reasons discussed below, Selene Finance L.P. and US Bank, N.A. as Trustee for BCAT 2016-18TT's Motion to Dismiss Plaintiffs' Second Amended Complaint should be **GRANTED IN PART AND DENIED IN PART** (Doc. 30), McCalla Raymer Leibert Pierce, LLC's Motion to Dismiss Plaintiffs' Second Amended Complaint should be **GRANTED** (Doc. 31), and Bank of America, N.A. and BOFA Merrill Lynch Asset Holdings, Inc.'s Motion

to Dismiss Plaintiffs' Second Amended Complaint should be **GRANTED IN PART AND DENIED IN PART** (Doc. 32).

## BACKGROUND

Pro se Plaintiffs William and Wendy Hadley ("Plaintiffs") filed the instant lawsuit against Defendants Bank of America, N.A. ("BANA"), Bank of America Merrill Lynch Asset Holdings, Inc. ("BOFA"),[1] Selene Finance L.P. ("Selene"), and US Bank, N.A. as Trustee for BCAT 2016-18TT ("U.S. Bank") in the Superior Court of Cherokee County on April 28, 2017. (Doc. 1, Ex. A). Defendants BANA and BOFA removed the case to this Court on April 28, 2017, on the grounds that Plaintiffs' Complaint raised a claim under federal law and the parties were completely diverse. (Doc 1). On May 5, 2017, Selene and U.S. Bank moved to dismiss Plaintiffs' Complaint. (Doc. 3). Defendants BANA and BOFA also moved to dismiss Plaintiffs' Complaint on the same day. (Doc. 5). Plaintiffs filed an Amended Complaint as a matter of right on May 22, 2017. (Doc. 6). Defendants Selene and U.S. Bank as well as Defendants BANA and BOFA subsequently moved to dismiss Plaintiffs' Amended Complaint. (Docs. 9, 12).

This Court found Plaintiffs' Amended Complaint was inadequately pled and failed to state a claim.[2] (R&R 7-9, Doc. 23). Because Plaintiffs are proceeding pro se and this

---

[1] Defendants indicate in their Motion to Dismiss that Plaintiffs have improperly named Defendant Bank of America Merrill Lynch Asset Holdings, Inc. and that the Defendant should have been named BOFA Merrill Lynch Asset Holdings, Inc. (Doc. 32).

[2] The Court also deemed moot the pending motions to dismiss the complaint. (Doc. 23).

2

Court could not conclude at that time that Plaintiffs could not state a claim, this Court gave them one opportunity to amend and cure the deficiencies within fourteen (14) days of December 28, 2017.[3] (Id. at 9-10). The Court warned that Plaintiffs' failure to timely file their repleaded complaint and cure the deficiencies would result in this Court's recommendation that the case be dismissed with prejudice. (Id. at 10). The Court's Report and Recommendation was approved and adopted on January 30, 2018. (Order, Doc. 29).

Plaintiffs filed a Second Amended Complaint on January 16, 2018 – five days after the deadline imposed by this Court. (SAC, Doc. 27). Because Plaintiffs are proceeding pro se and the filing was only five days late, this Court declines to dismiss the case on that basis. See Tannenbaum v. U.S., 148 F.3d 1262, 1263 (11th Cir. 1998) ("pro se pleadings are held to a less stringent standard than pleadings drafted by

---

[3] The Court ordered that Plaintiffs must (1) address the shortcomings noted in the R&R; (2) comply with the pleading requirements of Rules 8 and 9 of the Federal Rules of Civil Procedure; (3) include a factual background section setting forth the factual predicate (and not legal conclusions) for Plaintiffs' claims sufficient to provide context and to make their claims plausible; (4) identify by reference which specific factual allegations and acts by the Defendants support each cause of action within each count of Plaintiffs' Complaint; (5) clearly specify which Defendant is responsible for the alleged unlawful acts referenced within the Complaint; (6) clearly indicate the Defendant against whom Plaintiffs are bringing each cause of action and fully identify each Defendant's role with regard to Plaintiffs' loan, security deed, and any alleged cause of action; (7) when a pronoun or any other reference is used to refer to an entity discussed within the Complaint, clearly identify the entity to which the pronoun is referring as well as their role with regard to Plaintiffs' loan, security deed, and any alleged cause of action; and (8) exclude all generalized discussions of the mortgage industry, immaterial allegations, and discussion of cases or factual scenarios other than the facts specific to Plaintiffs' own loan, security deed, and foreclosure. (Doc. 23).

attorneys . . .").

Plaintiffs' Second Amended Complaint brings claims against BANA, BOFA, Selene, U.S. Bank, and McCalla Raymer Leibert Pierce, LLC ("McCalla") (collectively, "Defendants").  (SAC 21-55).  Plaintiffs claim this is their third lawsuit related to the mismanagement of their payments and inappropriate use of escrow accounts.  (SAC 2-4). Plaintiffs allege that in 2013, they entered into a settlement agreement ("Settlement Agreement") and loan modification ("Loan Modification") with BANA that waived their escrow.  (SAC 8-9, ¶ 13).  Plaintiffs state that the Settlement Agreement permanently modified the escrow terms in their original security deed ("Security Deed") and original note ("Note") from 2005.  (SAC 16,  ¶¶ 42-44).  In October of 2013, Plaintiffs proffer that BANA offered them a loan modification with principal reduction, but they declined it because it would have required an escrow.  (SAC 9,  ¶ 11).  In November of 2013, Plaintiffs claim they received two mortgage statements, one of which included a payment amount for escrow.  (SAC 9, 15,  ¶¶ 12, 38).  When Plaintiffs attempted to make their regular December 2013 payment without the escrow amount, BANA refused the payment and Plaintiffs were forced to mail their payments from December 2013 until November 2016.  (SAC 9-10,  ¶¶ 13-14, 38).  Plaintiffs received a notice from BANA dated January 10, 2014, stating that their "work out plan" required a monthly escrow of $304. 95.  (SAC 10-11, ¶ 17).  Plaintiffs allege they never requested or agreed to a work out plan after their Loan Modification.  (Id.).

Plaintiffs claim that BANA breached the Settlement Agreement by adding an

escrow that increased their monthly payment, and applied their monthly payments to escrow and a suspense account instead of to the principal and interest of their loan. (SAC 11, 14, 15, ¶¶ 20, 34-36, 41).  Plaintiffs state that they sent letters to BANA to notify them of the error, but BANA responded with a letter of Intent to Accelerate (SAC 11, ¶¶ 18-19, 21, 52-54).  According to Plaintiffs, BANA never correctly posted the principal and interest payments, and charged unauthorized inspection fees and late charges to their account. (SAC 15, ¶¶ 39, 40).  Plaintiffs contend this failure to correct the application of payments shows bad faith.  (SAC 16, ¶ 45).

In 2016, BANA sold their mortgage loan to BOFA, and BOFA then sold their interest to U.S. Bank.  (SAC 12, 19, ¶¶ 22, 24, 61).  Plaintiffs argue U.S. Bank and BOFA have "duties" under the Security Deed, and that U.S. Bank also has duties under the Loan Modification, and Settlement Agreement.  (SAC 19, ¶¶ 58-60).  Without providing a date, Plaintiffs allege BANA sold the servicing rights associated with their mortgage loan to Selene.  (SAC 12, ¶ 25).  Selene accepted Plaintiffs' payments of $1,247.37 for a few months and then started returning them.  (SAC 12, 16, ¶¶ 26, 46). Selene charged Plaintiffs late fees and inspection fees, and Selene's agents hung door hangers on Plaintiffs' front door without their permission that were visible to neighbors and the general public.  (SAC 11, 18, ¶¶ 27, 54-55).  When Plaintiffs' requested that Selene adhere to the terms of the Settlement Agreement and Loan Modification, Selene sent notices of intent to accelerate.  (SAC 18, ¶ 54).

Plaintiffs state that McCalla, acting on behalf of Selene, sent them a debt

5

collection letter dated March 4, 2017, which Plaintiffs disputed by responding in writing. (SAC 12-13, ¶¶ 28-29). McCalla replied in a letter dated March 17, 2017, accusing Plaintiffs of attempting to unilaterally alter the terms of their mortgage and stating that their home was scheduled for foreclosure sale on May 2, 2017. (SAC 13, ¶ 30.)

Plaintiffs argue they have tendered all payments due under the terms of the Settlement Agreement and Loan Modification, which were specific amounts to be applied to principal and interest only. (SAC 14, 17 ¶¶ 33, 47). Plaintiffs also allege they have paid all the taxes and insurance premiums as required by the Settlement Agreement. (SAC 17, ¶ 51). Plaintiffs contend their credit has been damaged and they have suffered severe emotional distress that affected their marriage and forced them to seek marriage counseling. (SAC 17, 19 ¶¶ 48, 49, 57).

Plaintiff brings claims against BANA for breaching and intentionally breaching the Settlement Agreement, Loan Modification, and Security Deed when BANA added the escrow account and applied Plaintiffs' monthly payments to escrow. (SAC 20-34). Plaintiffs also assert a claim for negligent infliction of emotional distress for BANA's refusal to correct escrow errors, and a claim for conversion based on BANA's improper application of Plaintiffs' payments to an escrow account and refusal to correct the error. (SAC 35-38). Plaintiffs also bring claims for specific performance, punitive damages, and fees and costs. (SAC 41-44).

Against Selene, Plaintiffs brings claims for attempted wrongful foreclosure and infliction of emotional distress based on Selene's referring their loan to McCalla for

AO 72A
(Rev.8/82)

foreclosure when it did not hold the Security Deed and Plaintiffs' loan was not in default. (SAC 44-45).  Plaintiffs also allege Selene breached the Loan Modification and Note by not accepting payments according to their terms.  (SAC 47-48).  Plaintiffs also request attorney's fees from Selene.  (SAC 48-49).

Plaintiffs argue U.S. Bank[4] breached the Loan Modification and Note by refusing Plaintiffs' principal and interest payments, and Plaintiffs also request attorney's fees from U.S. Bank.  (SAC 50-51).  Finally, Plaintiffs assert claims against McCalla for wrongful attempted foreclosure and intentional infliction of emotional distress.  (SAC 52-54).  Both claims are rooted in the letter Plaintiffs received from McCalla stating their home was scheduled for foreclosure.  (<u>Id</u>.).  Plaintiffs do not specifically bring any claims against BOFA in their Second Amended Complaint.  (SAC, Doc. 27).

Selene and U.S. Bank filed a Motion to Dismiss Plaintiffs' Second Amended Complaint on January 30, 2018.  (Selene and U.S. Bank Motion to Dismiss, Doc. 30). Selene and U.S. Bank argue Plaintiffs have not pled the essential elements of a claim for attempted wrongful foreclosure, that there is no physical injury to support a claim of negligent infliction of emotional distress, and that initiating foreclosure proceedings cannot sustain an intentional infliction of emotional distress claim.  (<u>Id.</u> 8-10).  Selene and U.S. Bank aver that Plaintiffs' breach of contract claim should fail because Plaintiffs neither identify the specific provision of an agreement that Selene and U.S. Bank

---

[4] Plaintiffs refer to U.S. Bank as "BCAT 2016-18TT," the name of the trust for which it serves as Trustee.  (SAC 50-51).

7

breached nor allege that Selene is a party to or assignee of the agreement. (Id. 10-13). Finally, Selene and U.S. Bank point out that Plaintiffs' are proceeding pro se and their claim for attorney's fees and costs is conditioned on Plaintiffs prevailing on an underlying claim. (Id. at 13).

McCalla also filed a Motion to Dismiss Plaintiffs' Second Amended Complaint on January 30, 2017. (McCalla Motion to Dismiss Br., Doc. 31). McCalla argues Plaintiffs have failed to plead the elements of wrongful attempted foreclosure because McCalla did not publish untrue and derogatory information about Plaintiffs, and that McCalla's actions are not extreme and outrageous to support a claim for intentional infliction of emotional distress. (Id. at 7-8). McCalla also contends that, because its addition to the case destroys complete diversity, the Court must either deny joinder of McCalla, or permit joinder and remand the case to the state court. (Id. at 13-14). McCalla requests to be dismissed, arguing that Plaintiffs fraudulently joined McCalla for the sole purpose of defeating diversity jurisdiction and have failed to allege any facts that support a claim against McCalla. (Id. at 14).

BANA and BOFA filed a Motion to Dismiss Plaintiffs' Second Amended Complaint on February 1, 2018. (BANA and BOFA Motion to Dismiss, Doc. 32). BANA and BOFA argue Plaintiffs' Second Amended Complaint is an impermissible shotgun pleading that should be dismissed. (Id. at 5-7). BANA and BOFA contend that Plaintiffs have not identified a specific breach to support their breach of contract claim, the misapplication of funds does not support a claim for conversion, Plaintiffs do not

AO 72A
(Rev.8/82)

have a physical injury necessary to state a claim of negligent infliction of emotional distress, Plaintiffs have failed to demonstrate the level of outrageousness and egregiousness necessary to support a claim for intentional infliction of emotional distress, and Plaintiffs' claims for punitive damages and attorney's fees are forms of relief dependent on the underlying claims. (Id. at 9-15).

Plaintiffs filed "Answers" to Defendants' Motions to Dismiss. (Docs. 33-35). In Plaintiffs' response to Selene and U.S. Bank's Motion to Dismiss, Plaintiffs admit that they did not allege the publication of untrue and derogatory information, but argue pleading those facts is not required to sustain their claim for wrongful attempted foreclosure. (Pls' Resp. to Selene and U.S. Bank's Motion to Dismiss 3, 6, Doc. 33). Plaintiffs then reframe the wrongful attempted foreclosure claim as one for breaching a unspecified statutory duty and failing to fairly exercise the powers in the Security Deed by scheduling Plaintiffs' home for sale when Selene neither held the Security Deed nor complied with O.C.G.A. § 44-14-162.2. (Id. at 4-5). Plaintiffs contend that they can maintain a claim for emotional distress damages without a physical injury and that Selene's actions were severe enough to support their intentional infliction of emotional distress claim. (Id. at 9-10) (analogizing to wrongful foreclosure cases). Plaintiffs aver that Selene stated in an earlier filing (with a document number that does not exist in this case) that it held the Note and the Security Deed; therefore, Selene is obligated to comply with the terms of the Settlement Agreement. (Id. at 10-11). Finally, Plaintiffs state that their other claims have been sufficiently pled, therefore their claim for attorney's fees

should survive.  (Id. at 13-14).

Plaintiffs responded to BANA and BOFA's Motion to Dismiss by arguing their breach of contract claim should survive because they pled sufficient facts to identify the contract, breach, and damages. (Pls' Response to BANA and BOFA Motion to Dismiss 4, Doc. 35).  Plaintiffs point out that BANA admitted to adding the escrow in its Motion to Dismiss.  (Id.).  Plaintiffs also allege BANA created their default by misapplying payments, and add new details about BANA cashing their checks and not applying their payments on March 28, 2014, and in November 2014, June 2015, October 2015, and June 2016.  (Id. at 6).  Plaintiffs then claim for the first time that BANA violated mortgage servicing regulations promulgated by the Georgia Department of Banking and Finance.[5]  (Id. at 6).  As to their claim for conversion, Plaintiffs argue it does not arise from misapplication of payments pursuant to a contract, but from BANA applying their payments to a nonexistent account and cashing checks without crediting them.  (Id. at 7).  Plaintiffs aver that physical injury is not required to maintain a negligent infliction of emotional distress claim and argue that they have pled mental anguish so severe they had to seek marriage counseling.  (Id. at 10).  Plaintiffs argue their punitive damages claim should survive a motion to dismiss, and that they are entitled to their attorney's

---

[5] This Court will not consider claims improperly raised for the first time in Plaintiff response. Cobb v. JPMorgan Chase, LLC, No. 1:11-CV-2025-AT-JFK, 2011 WL 13221045, at *4 (N.D. Ga. Dec. 28, 2011) ("Plaintiff cannot raise new claims for the first time in a response brief, in lieu of seeking leave of court to amend the complaint."), adopted in relevant part by No. 1:11-CV-2025-AT, 2012 WL 13009236 (N.D. Ga. Mar. 30, 2012).

fees under the Settlement Agreement if they prevail.  (<u>Id.</u> at 11.)  They also state for the first time that they hired an attorney to communicate with BANA during 2014.  (<u>Id.</u>).

In Plaintiffs' response to McCalla's Motion to Dismiss, they assert that they can maintain a claim for wrongful attempted foreclosure without the publication of untrue and derogatory information and cite to cases involving wrongful completed foreclosures. (Pls' Response to McCalla's Motion to Dismiss 4-8, Doc. 34).  Plaintiffs also allege McCalla did not have the authority to foreclose and did not comply with O.C.G.A. § 44-14-162.2.  (<u>Id.</u> at 8-9).  In support of their claim for intentional infliction of emotional distress, Plaintiffs argue McCalla acted intentionally and recklessly when it stated their home was scheduled for foreclosure sale despite knowing that Selene's name was not on the Security Deed, and by accusing Plaintiffs of committing felonies.  (<u>Id.</u> at 9-11). Plaintiffs state that attorney's fees are recoverable in tort actions, and that they can prevail on their claims.  (<u>Id.</u> at 12).  Finally, Plaintiffs argue they did not join McCalla Raymer to destroy subject matter jurisdiction and contend that they have cognizable claims against McCalla Raymer.  (<u>Id.</u> at 15).  McCalla filed a Reply, reiterating and supporting the same arguments made in its Motion to Dismiss.  (McCalla Reply, Doc. 36).

## **STANDARD OF REVIEW**

Dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations of the Plaintiffs' Second Amended Complaint, there is a dispositive legal issue which precludes relief or if the claim is based on an indisputably meritless legal

AO 72A
(Rev.8/82)

theory.  <u>Neitzke v. Williams</u>, 490 U.S. 319, 326 (1989); <u>Brown v. Crawford Cnty.</u>, 960 F.2d 1002, 1009-10 (11th Cir. 1992).  A Rule 12(b)(6) motion to dismiss also tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  To state a claim with sufficient specificity requires that the complaint have enough factual matter, which when taken as true, suggests the required elements of the claim.  <u>Watts v. Fla. Int'l Univ.</u>, 495 F.3d 1289, 1296 (11th Cir. 2007); <u>Hill v. White</u>, 321 F.3d 1334, 1335 (11th Cir. 2003).  Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Twombly</u>, 550 U.S. at 555 (citing <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 508 n.1 (2002)).

## **MCCALLA'S MOTION TO DISMISS**

## I.   **SUBJECT MATTER JURISDICTION**

The elimination of federal claims and the inclusion of Defendant McCalla in Plaintiffs' Second Amended Complaint calls into question this Court's subject matter jurisdiction.  Before turning to the merits, the Court must first determine whether it has jurisdiction over the case.  <u>Fitzgerald v. Seaboard Sys. R.R.</u>, 760 F.2d 1249, 1251 (11th Cir. 1985) (per curiam) ("A federal court not only has the power but also the obligation

at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises."). If this Court does not have jurisdiction, it is powerless to rule on the merits of the case. Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999).

### A.    **Removal and Amended Pleadings**

Defendants BANA and BOFA removed this case from the Superior Court of Cherokee County to this Court based on federal question and diversity jurisdiction. (Notice of Removal, Doc. 1). Federal question jurisdiction under 28 U.S.C. § 1331 stemmed from Plaintiffs' allegations of "fraudulent reporting to credit bureaus" against BANA and BOFA, which BANA and BOFA reasonably interpreted to assert a violation of the Fair Credit Reporting Act ("FCRA"). (Id. at 3-4). Because Plaintiffs brought a claim under federal law, this Court could exercise supplementary jurisdiction over related state law claims under 28 U.S.C. §1367. (Id. at 4-5).

BANA and BOFA averred that this Court also had diversity jurisdiction under 28 U.S.C. §1332 because Plaintiffs and Defendants had complete diversity of citizenship and the amount in controversy exceeded $75,000.[6] (Notice of Removal 5, Doc. 1). At the time the case was removed, McCalla had not yet been added as a Defendant. (Id. Ex. 1). As to the amount in controversy, Plaintiffs did not request a sum certain in their Complaint, but instead requested compensatory damages for multiple causes of action,

---

[6] Defendants BANA and BOFA allege BANA is a citizen of North Carolina, Selene Finance is a citizen of Texas, and U.S. Bank is a citizen of Ohio; they fail to mention BOFA. (Notice of Removal 5-6, Doc. 1).

punitive damages, and litigation costs. (Id. Ex. 1, at 6). BANA and BOFA also noted that the Complaint challenged Defendants' right to collect a mortgage loan with a balance of $327,255.78 as of December 1, 2012. (Id. Ex. 1, at 19). BANA and BOFA believe they proved by a preponderance of the evidence that the amount in controversy more likely than not exceeded $75,000. (Id. at 7-9).

After the defendants filed their motions to dismiss, Plaintiffs filed an Amended Complaint as of right on April 28, 2018. (Am. Compl., Doc. 6). In Plaintiffs' Amended Complaint, they dropped their allegations of "fraudulent reporting to credit bureaus" against BANA and BOFA; however, they raised claims under other federal statutes for the first time. (Id.). Plaintiffs alleged Selene and U.S. Bank violated the Fair Debt Collections Practices Act (FDCPA), the duty to promptly apply payments under "U.S.C. § 1640(a)," as well as "U.S.C. §§ 2605(f), 2614" and "15 U.S.C. § 1641(f)." (Id. at 7-8). Plaintiffs also added McCalla as a defendant and alleged that McCalla violated the FDCPA. (Id. at 8).

On December 28, 2017, this Court recommended dismissal of the Amended Complaint, but offered Plaintiffs the opportunity to amend their complaint to cure the pleading deficiencies within fourteen (14) days. (R&R, Doc. 23). Plaintiffs then filed the Second Amended Complaint on January 16, 2018. (SAC, Doc. 27). In Plaintiffs' Second Amended Complaint, they kept McCalla as a defendant, but are no longer pursuing any federal claims against any of the Defendants. (Id.).

There is no motion to remand before the Court, but McCalla did address the

14

jurisdictional issue in its Memorandum of Law in Support of its Motion to Dismiss. (McCalla Br. 12-15, Doc. 31-1). McCalla argues that, because the addition of McCalla as a defendant destroys complete diversity, the Court must either deny joinder, or permit joinder and remand the case to the state court. (Id. at 13-14) (citing 28 U.S.C. § 1447(e)). McCalla requests dismissal, arguing that Plaintiffs fraudulently joined McCalla for the sole purpose of defeating diversity jurisdiction and have failed to allege any facts to support a claim against McCalla. (Id. at 14).

Plaintiffs responded to McCalla's argument, rejecting the assertion that they added McCalla only to defeat diversity jurisdiction. (Pls' Resp. 12-15, Doc. 34). Plaintiffs explain that when they added McCalla as a defendant in their Amended Complaint, they were not seeking to defeat federal jurisdiction because they brought a FDCPA claim against McCalla. (Id. at 12). Plaintiffs aver they dropped the FDCPA claim in their Second Amended Complaint because they felt the facts did not support the claim and provided several reasons for that decision. (Id. at 13).

### B.    **Analysis**

This Court must review the Second Amended Complaint to determine whether it has subject matter jurisdiction over the case.[7] Without any claims being brought under federal law, this Court can no longer exercise federal question jurisdiction under 28

---

[7] The Second Amended Complaint superseded Plaintiffs' prior pleadings; therefore, the Court reviews only the Second Amended Complaint to determine whether it has jurisdiction over the case. Devengoechea v. Bolivarian Republic of Venezuela, 889 F.3d 1213, 1229 (11th Cir. 2018) ("Once an amended pleading is filed, we look to the amended pleading to determine jurisdiction.).

AO 72A
(Rev.8/82)

U.S.C. § 1331; therefore, subject matter jurisdiction, if it exists, must be based on diversity jurisdiction.  To determine citizenship for purposes of diversity jurisdiction, a limited liability company like McCalla is considered to be a citizen of any state of which a member of the company is a citizen.  Rolling Greens MHP, L.P. v. Comcast CSCH Holdings L.L.C.., 374 F.3d 1020, 1022 (11th Cir. 2004).  Although Plaintiffs do not state the citizenship of McCalla in their Second Amended Complaint, McCalla is a Georgia-based law firm, and McCalla acknowledges in its Motion to Dismiss that it is a non-diverse defendant.  (McCalla Motion to Dismiss, Doc. 13, Ex. 1, at 14).  See Trust v. DLJ Mortgage Capital, Inc., No. 1:15-CV-457-RWS-LTW, 2015 WL 12227732, at *3 (N.D. Ga. July 16, 2015) ("[It] is undisputed that McCalla is a citizen of Georgia . . . "), adopted by 2015 WL 11978787 (N.D. Ga. Aug. 6, 2015).

The addition of McCalla, a non-diverse defendant, destroys the complete diversity required for diversity jurisdiction under 28 U.S.C. § 1332.  Complete diversity requires each defendant to be a citizen of a different state from each plaintiff.  Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978).  If McCalla was properly joined, this Court does not have subject matter jurisdiction and must remand the case to state court. 28 U.S.C. § 1447(e); Florence v. Crescent Resources, LLC, 484 F.3d 1293, 1297 (11th Cir. 2007).

Plaintiffs have a right to choose their forum, and any uncertainties about jurisdiction are resolved in favor of remand.  Manley v. Ford Motor Co., 17 F. Supp. 3d 1375, 1379–80 (N.D. Ga. 2014) ("Except where Congress has granted federal courts

exclusive jurisdiction, plaintiffs are the 'master of the complaint' and are 'free to avoid federal jurisdiction' by structuring their complaint to fall short of a requirement of federal jurisdiction.") (quoting <u>Scimone v. Carnival Corp.</u>, 720 F.3d 876, 882 (11th Cir. 2013)). Nevertheless, a plaintiff's fraudulent joinder of a non-diverse defendant will not defeat complete diversity. <u>Id.</u> To establish fraudulent joinder, the removing party has the burden of proving by clear and convincing evidence that there is no possibility the plaintiff can establish a cause of action against the resident defendant. <u>Stillwell v. Allstate Ins. Co.</u>, 663 F.3d 1329, 1332 (11th Cir. 2011). The Court must view the factual allegations in the light most favorable to the plaintiff and resolve uncertainties about state law in the plaintiff's favor. <u>Shannon v. Albertelli Firm, P.C.</u>, 610 Fed. App'x 866, 870 (2015). "If there is a reasonable possibility that the complaint states a cause of action against the non-diverse defendant under state law, the district court must remand the case to state court." <u>Id.</u> "The potential for legal liability must be reasonable, not merely theoretical." <u>Legg v. Wyeth</u>, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005).

Plaintiffs bring claims against McCalla in their Second Amended Complaint for wrongful attempted foreclosure, intentional infliction of emotional distress, and attorney's fees under O.C.G.A. § 13-6-11. (SAC 52-55).

### 1.    Wrongful Attempted Foreclosure

In support of their claim for wrongful attempted foreclosure, Plaintiffs allege that: (1) McCalla did not hold the Security Deed when it scheduled the Plaintiffs' home for foreclosure; (2) if McCalla held the Security Deed, it breached its duty to exercise the

17

rights in the Security Deed fairly and properly notify Plaintiffs of the foreclosure sale; (3) McCalla lacked the legal ability to foreclose because Plaintiffs were not behind on their mortgage payments; (4) McCalla had Plaintiffs' loan in its foreclosure department; and (5) the notices Plaintiffs received about a scheduled foreclosure sale caused them "severe anguish and emotional distress." (SAC 52-53, ¶¶ 2-7). McCalla argues the Plaintiffs failed to plead the elements of the claim: that McCalla published untrue or derogatory information, that McCalla did so knowingly or intentionally, and that McCalla made any statements about Plaintiffs' financial condition. (McCalla's Motion to Dismiss Br. 7-9, Doc. 31-1). McCalla also states that it was not required to hold the Security Deed in order to initiate a foreclosure sale on behalf of the lender. (Id. at 8). Plaintiffs filed a Response, arguing that publication was not required for a wrongful attempted foreclosure claim, that there are other reasons a foreclosure may be illegal, that there is no evidence that McCalla complied with Georgia's statute governing materialmens liens, and that McCalla did not send a foreclosure notice under O.C.G.A. 44-14-162.2. (Pls' Resp. to McCalla's Motion to Dismiss, Doc. 34).

Even construing the facts in the light most favorable to Plaintiffs, this Court finds there is no reasonable possibility that the allegations in the Second Amended Complaint state a claim of wrongful attempted foreclosure against McCalla. To prevail on a claim of wrongful attempted foreclosure, Plaintiffs must show that McCalla "knowingly published an untrue and derogatory statement concerning their financial conditions and the plaintiffs sustained damages as a direct result of that statement." McGowan v.

18

Homeward Residential, Inc., 500 F. App'x 882, 885 (11th Cir. 2012) (citing Aetna Fin. Co. v. Culpepper, 171 Ga. App. 315, 319 (1984)).

Plaintiffs did not direct the Court to any statement McCalla published that was "untrue and derogatory" about their financial conditions. Plaintiffs attached two letters from McCalla to their Second Amended Complaint. (SAC Exs. 22-24, Doc. 27-1). The letter dated  March 4, 2017, informed Plaintiffs that the "loan has been referred to this law firm for handling," the amount of the debt is $316,312.42, and that "the law firm is seeking to solely to foreclose the creditor's lien on real estate and will not be seeking a personal money judgment." (Id. at 22.) The letter dated March 17, 2017, purported to be responding to Plaintiffs' correspondence disputing the debt, stated that "[t]he security deed . . . authorizes the procedures for foreclosure . . . in the event of default," and the note and security deed are "valid, binding, and legally enforceable obligations . . . [that] cannot be altered unilaterally by you, nor voided by unauthorized means." The March 17, 2017 letter also stated that a payoff quote was enclosed, informed Plaintiffs that "a foreclosure sale date for the referenced property is scheduled for May 2, 2017," and provided contact information for Plaintiffs to contact McCalla's Foreclosure Team and Selene Finance. (Id. at 22-23).

Plaintiffs nowhere in their Second Amended Complaint contest the validity of any of the statements in McCalla's letters. (SAC, Doc. 27). Plaintiffs claim that they were not delinquent in payments, but do not allege McCalla made any statements about Plaintiffs' delinquency or had any knowledge of Plaintiffs' payment history. (Id.). Mere

19

mention of a scheduled foreclosure sale "is not a statement of a debtor's financial condition, but a statement about [a lender's] future actions." <u>Bates v. JPMorgan Chase Bank, NA</u>, 768 F.3d 1126, 1134 (11th Cir. 2014).  Plaintiffs' allegations that defendants did not have authority to initiate foreclosure do not support a wrongful attempted foreclosure claim.  <u>Jenkins v. McCalla Raymer, LLC</u>, 492 F. App'x 968, 971-72 (11th Cir. 2012) (affirming trial court's dismissal of wrongful attempted foreclosure claim because the plaintiffs alleged that the defendants did not have authority to initiate foreclosure because security deeds were not properly assigned, but did not allege that the defendants knowingly published any false or derogatory information.).  Here, the Plaintiffs have not pled the essential elements of a wrongful attempted foreclosure because they do not allege McCalla made an untrue or derogatory statement about their financial condition.

Further, nothing in Plaintiffs' Second Amended Complaint suggests that any of McCalla's statements, even if they were untrue and derogatory statements about Plaintiffs' financial condition, were ever published.  (SAC, Doc. 27).  Plaintiffs allege BANA and Selene left door hangers on their door that were visible to others, but do not state the information they contained.  (SAC 18, ¶¶ 55-56).  The letters from McCalla that Plaintiff attached to their Second Amended Complaint were only addressed to Plaintiffs.  (SAC Exs. 22-24, Doc. 27-1).  Nor do Plaintiffs claim that Defendants ever published notice as would be required before conducting a foreclosure sale.  <u>Nexgen Cumming, LLC v. State Bank & Tr. Co.</u>, 313 Ga. App. 715, 716 (2012) ("A nonjudicial foreclosure

AO 72A
(Rev.8/82)

sale must be advertised in the same manner as a judicial foreclosure sale.  OCGA § 44-14-162(a).  That manner is set forth in OCGA §§ 9-13-140(a) and 9-13-141, which provide, among other things, that notice of the sale shall be published once a week for four weeks in the legal organ for the county.").  After reviewing the Second Amended Complaint, this Court finds there is no reasonable possibility that Plaintiffs have stated a claim for wrongful attempted foreclosure against McCalla.

### 2.    Intentional Infliction of Emotional Distress

Plaintiffs claim McCalla caused them severe emotional distress by sending a letter to them stating their home was scheduled for foreclosure on May 2, 2017.  (SAC 54, ¶¶ 2,5).  Plaintiffs allege this statement caused them severe emotional distress and that McCalla's actions were malicious, willful, or wanton, and done with reckless indifference to any consequences.  (SAC 54, ¶ 4).

McCalla argued in its Motion to Dismiss that it did not need to have an ownership interest in the Security Deed or a judgment to assist Selene with a nonjudicial foreclosure sale.  (McCalla Motion to Dismiss Br. 10-11, Doc. 31-1).  McCalla also avers that it has not taken any actions that would cause severe emotional distress to Plaintiffs, and requests dismissal of the claim.  (Id.).  In Plaintiffs' response, they argue McCalla knew Selene did not hold the Security Deed, and that only the holder of a security deed can foreclose.  (Pls' Response 9-10, Doc. 34).  Plaintiffs also contend that it is extreme and outrageous to state that a house is scheduled for foreclosure when neither McCalla nor Selene had the authority to sell it.  (Id. at 10).  Plaintiffs state that McCalla accused them

21

of "fraud and forgery."  (Id.).  Plaintiffs cite authorities holding that a wrongful foreclosure can form the basis of a claim for intentional infliction of emotional distress, but provide no authority addressing the claim in the context of a wrongful attempted foreclosure.  (Id. at 10-11).  Plaintiffs argue they have met their burden at the pleading stage.  (Id. at 11).  In its Reply, McCalla reasserted its earlier arguments and pointed out that it did not accuse Plaintiffs of "fraud and forgery" by including a statement in a letter that the mortgage documents are "valid, binding, and legally enforceable obligations" and cannot be unilaterally altered or voided by authorized means.  (McCalla Reply 6, Doc. 36).

A claim of intentional infliction of emotional distress contains the following elements: "(1) [t]he conduct must be intentional or reckless, (2) [t]he conduct must be extreme and outrageous, (3) [t]here must be a causal connection between the wrongful conduct and the emotional distress, and (4) [t]he emotional distress must be severe." Smith-Tyler v. Bank of Am., N.A., 992 F. Supp. 2d 1277, 1282 (N.D. Ga. 2014) (citing United Parcel Serv. v. Moore, 238 Ga. App. 376, 377 (1999)).  To be considered extreme and outrageous, the conduct must "go beyond all reasonable bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community." Id.  Extreme and outrageous conduct generally does not include "mere insults, indignities, threats, annoyances, petty oppressions, or other vicissitudes of daily living."  Id.

McCalla's conduct did not rise to the level necessary to support a claim for intentional infliction of emotional distress.  Farrell v. Time Serv., Inc., 178 F. Supp.2d

22

1295, 1299 (N.D. Ga. 2001) (quoting <u>Biven Software, Inc. v. Newman</u>, 222 Ga. App. 112, 113-14 (1996)); <u>Cornelius v. Auto Analyst, Inc.</u>, 222 Ga. App. 759, 762 (1996) (where defendant sent a letter threatening plaintiff with arrest if he did not pay the debt owed to defendant, the court stated that, while not approving the defendant's conduct, there was no cause of action for intentional infliction of emotional distress as a matter of law). McCalla's conduct in sending a letter to the Plaintiffs informing them that a foreclosure sale would be conducted in the future, but then failing to take any further action or conduct a foreclosure sale is not extreme and outrageous. <u>See</u> <u>De Souza v. JP Morgan & Chase Co.</u>, No. 1:13-CV-2447-TWT, 2014 WL 1338762, at *5 (N.D. Ga. Apr. 2, 2014) (holding that the improper administration of the foreclosure process does not support a claim for intentional infliction of emotional distress).

The facts of this case are similar to those in <u>Blue View Corp. v. Bell</u>, 298 Ga. App. 277 (2009), where the Georgia Court of Appeals reversed the trial court's entry of a default judgment on an intentional infliction of emotional distress claim. <u>Id.</u> at 278-80. In <u>Blue View</u>, the defendant instituted and then withdrew foreclosure proceedings on a loan that had been paid in full. <u>Id.</u> at 278. The court held that the facts alleged did not support a claim for intentional infliction of emotional distress. <u>Id.</u> at 279-80. In another analogous case, McCalla instituted foreclosure proceedings on a loan that had been paid off through a refinance. <u>Smith-Tyler</u>, 992 F. Supp. 2d at 1280. McCalla sent the plaintiff a foreclosure notice, and the plaintiff filed bankruptcy to stop the foreclosure sale. <u>Id.</u> Although McCalla was mistakenly collecting a debt that had been satisfied, the

court found that McCalla's conduct was not extreme or outrageous, noting that sloppy business practices do not generally go beyond all reasonable bounds of decency.  Id. at 1282 (quoting United Parcel Service, 238 Ga. App. at 377).  Even if McCalla did not have the authority to foreclose at the time it sent the letter dated March 17, 2017, simply informing Plaintiffs of a future foreclosure sale date does not rise to the level of being extreme and outrageous.

Plaintiffs also state that McCalla accused them of committing felonies in the March 17, 2017 letter, which they cite in their responsive brief as further support for their claim of intentional infliction of emotional distress.  (Pls' Response 10, Doc. 34).  The letter stated that "[t]he security deed . . . authorizes the procedures for foreclosure . . . in the event of default," the note and security deed are "valid, binding, and legally enforceable obligations . . [t]hese obligations cannot be unilaterally altered by you, nor voided by unauthorized means."  (SAC Exs. 23, Doc. 27-1).  These statements appear to be recitations of fact and not accusations that Plaintiffs committed felonies.  Further, even if they were accusations, insults do not typically rise to the threshold level of outrageousness.  Smith-Tyler, 992 F. Supp. 2d at 1282; see Ghodrati v. Stearnes, 314 Ga. App. 321, 322 (2012) (discriminatory and racist slurs and lewd and inappropriate sexual comments were not sufficiently extreme and outrageous); Cook v. Covington Credit of Ga., Inc., 290 Ga. App. 825, 828 (2008) (use of a racial epithet, while demeaning, degrading, and insensitive, was not so egregious or outrageous that it would sustain a claim for intentional infliction of emotional distress).  As a result, Plaintiffs have failed

to allege facts that could plausibly support a claim for intentional infliction of emotional distress against McCalla.

### 3.    Attorney's Fees

Plaintiffs' claim for attorney's fees under O.C.G.A. §13-6-11 requires an underlying claim. <u>Gilmour v. Am. Nat. Red Cross</u>, 385 F.3d 1318, 1324 (11th Cir. 2004). Because Plaintiffs have failed to allege facts sufficient to state a claim for either wrongful attempted foreclosure or intentional infliction of emotional distress against McCalla, Plaintiffs cannot independently maintain a claim for attorney's fees against McCalla.

Therefore, because there is no possibility that Plaintiffs can establish a cause of action against McCalla under the facts contained in their Second Amended Complaint, this Court finds that McCalla was improperly joined in this case and recommends that McCalla's Motion to Dismiss be **GRANTED**.

### **BANA AND BOFA'S MOTION TO DISMISS**

In the section of their Second Amended Complaint where Plaintiffs identify the acronyms by which they refer to Defendants and in the heading before listing their claims against BANA, Plaintiffs state that their claims against BANA are also brought against "Bank of America Corp.," but they do not mention Bank of America Corp. elsewhere in the Second Amended Complaint or explain how it is or was involved with the loan in question or related to BANA. (SAC 2, Doc. 27). As a result, to the extent Plaintiffs attempt to allege any claims against Bank of America, Corp., they are

AO 72A
(Rev.8/82)

insufficiently pled and this Court recommends they be **DISMISSED**.

Similarly, Plaintiffs name BOFA as a defendant in the lawsuit, but do not bring any claims against it. (SAC 21-55). Indeed, BOFA is rarely mentioned in the Second Amended Complaint, except where Plaintiffs claim BOFA owned their interest in the Note for some unspecified duration during 2016, and allege that it "has duties" under the Security Deed. (Id. at 19). Therefore, to the extent Plaintiffs have attempted to make any claims against BOFA, they are insufficiently pled, and this Court recommends they be **DISMISSED**.

## I.    BREACH OF CONTRACT

This Court will evaluate all of Plaintiffs' contract-based claims against BANA together, as they all assert a breach of an escrow provision that Plaintiffs allege is memorialized in the Settlement Agreement, Loan Modification, and Security Deed. (SAC 21-38). Plaintiffs state that BANA entered into a contract with them when it settled a lawsuit in 2013 by signing a Settlement Agreement and Loan Modification, and that those two documents also modified the terms of their Note and Security Deed. (SAC 8-9, ¶ 10). Specifically, Plaintiffs allege the Settlement Agreement permanently waived escrow items. (Id.). Despite this term, Plaintiffs state, and BANA does not contest, that BANA added an escrow to Plaintiffs' mortgage account in late 2013. (SAC 9, ¶¶ 12-13).

Plaintiffs claim that BANA inappropriately applied their payments to escrow, which caused a default on their account. (SAC 11, 14-15, ¶¶ 20, 35, 37, 40). BANA

then charged unauthorized inspection and late fees. (SAC 15, ¶ 39). Plaintiffs maintain that they have timely tendered all payments due under the Settlement Agreement and Loan Modification and paid their taxes and insurance when they came due. (SAC 14, 17, ¶¶ 33, 51). BANA admits that an escrow was added to their account "during implementation of the modification," but that it was refunded, and no escrow was charged by April 2014. (BANA and BOFA's Motion to Dismiss 3, Doc. 32). Despite the refund, BANA alleges the Plaintiffs remained in default on their regular monthly payments. (Id.).

In order to establish a breach of contract claim under Georgia law, a plaintiff must prove: (1) a breach of the contract, and (2) resultant damages (3) for the party who has the right to complain about the contract being broken. Inland Atlantic Old Nat'l Phase I, LLC v. 6425 Old Nat'l, LLC, 329 Ga. App. 671, 677 (2014); Dewrell Sacks, LLP v. Chicago Title Ins. Co., 324 Ga. App. 219, 223 (2013). The copy of the Settlement Agreement attached to Plaintiffs' Second Amended Complaint has both Countrywide Home Loans, Inc. ("Countrywide") and BANA's signatures.[8] (SAC Exs. 154, Doc. 27-1). The Settlement Agreement states that after Plaintiffs made three trial payments, BANA would provide a loan modification to Plaintiffs no later than April 3, 2013. (Id.

---

[8] "[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." Brooks v. Blue Cross and Blue Shield of Fl., 116 F.3d 1364, 1369 (11th Cir. 1997).

at 147). The Settlement Agreement also bars the creation of an escrow account: "[N]othing in the Second Loan Modification Agreement shall require Plaintiffs to pay any amounts into an escrow account or otherwise be construed as modifying Paragraph 1(D) below. . ." (Id. at 148). Paragraph 1(D) appears later in the document, summarizing the terms of the Loan Modification, and stating that: "Plaintiffs shall not be required to pay to BANA, on the date Plaintiffs' monthly payments are due, any amounts for Escrow Items as that term is defined in Section 3 of the Security Deed . . ." (Id. ). The terms of the Settlement Agreement support Plaintiffs' allegations that they entered into a contract with BANA wherein BANA agreed not to maintain an escrow account on their mortgage loan. Also attached to Plaintiffs' Second Amended Complaint are letters received from BANA reflecting that it was charging Plaintiffs an escrow amount in early 2014. (Id. at 1-3, 7).

Based on Plaintiffs allegations, documents attached to the Second Amended Complaint, and BANA's own admissions, Plaintiffs have adequately pled that BANA added an escrow account to Plaintiffs' account in violation of the Settlement Agreement. Plaintiffs also allege BANA's misapplication of their payments to a non-existent escrow account caused them to fall behind on their monthly payments, which damaged their credit and caused emotional distress. (SAC 22, ¶ 8). This Court finds these allegations state a plausible claim for breach of contract against BANA and recommends that BANA's and BOFA's Motion to Dismiss Plaintiffs' breach of contract claim be **DENIED** as to BANA.

## II.   NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs bring a claim for negligent infliction of emotional distress based on BANA's payment application errors and failure to correct those errors.  (SAC 35-38).  BANA argues Plaintiffs did not suffer the physical impact or pecuniary loss necessary to state a claim of negligent infliction of emotional distress.  (BANA and BOFA Motion to Dismiss 12-13, Doc. 32).  Plaintiffs respond by quoting a Georgia Supreme Court case that "pecuniary loss must occur as a result of a tort involving injury to the person even though this injury may not be physical," and by arguing that they have pled more than one tort and severe mental anguish.  (Pls' Resp. to BANA and BOFA's Motion to Dismiss 10, Doc. 35).

Georgia does not recognize an independent cause of action for "negligent infliction of emotional distress."   Heard v. GMAC Mortg., LLC, No. 1:12-CV-4239-WSD, 2013 WL 12109765, at *9 (N.D. Ga. July 19, 2013) (quoting Holbrook v. Stansell, 254 Ga. App 553, 554 (2002).  When a plaintiff brings a claim concerning negligent conduct, a plaintiff may only recover for emotional distress where there is "some impact on the plaintiff, and that impact must be a physical injury." Roberts v. JP Morgan Chase Bank, Nat'l Ass'n, 342 Ga. App. 73, 78 (2017) (citing Lee v. State Farm Mut. Ins. Co., 272 Ga. 583, 584 (2000)).  Plaintiffs do not bring any claims rooted in negligence against BANA in this case; therefore, they cannot independently seek recovery of emotional distress damages on the basis of negligence.

To the extent Plaintiffs attempt to plead a claim for negligence or negligent

29

servicing based on the misapplication of their mortgage payments, that effort falls short. Georgia law requires plaintiffs bringing a negligence claim to allege a legal duty owed to them by defendants. Rampersad v. CitiMortgage, No. 1:14-CV-01674-RWS, 2014 WL 12323681, at *4 (N.D. Ga. Nov. 5, 2014) (citing Heston v. Lilly, 248 Ga. App. 856, 857-58 (2001). The legal duty alleged cannot be a duty owed under a contract. Greaves v. Bank of America, No. 1:12-CV-02828-RWS, 2013 WL 1147531, at *4 (N.D. Ga. Mar. 19, 2013). All of the facts Plaintiffs allege in support of their negligent infliction of emotional distress claim flow from the Settlement Agreement, and they do not cite any independent duty owed to them by BANA. (SAC 35-38). As a result, Plaintiffs have failed to state a claim for negligence. Kynes v. PNC Mortg., No. 1:12-CV-4477-TWT, 2013 WL 4718294, at *11-12 (N.D. Ga. Aug. 30, 2013) (dismissing borrower's claim that lender negligently serviced his loan because "failure to perform a contract does not also constitute a tort"); Greaves, 2013 WL 1147531, at *4 (dismissing a claim for negligent servicing because plaintiff did not allege a duty defendant owed to her outside of the security deed).

Because "negligent infliction of emotional distress" is not an independent claim recognized under Georgia law, and Plaintiffs have not alleged sufficient facts to support a claim for negligence, Defendant's motion to dismiss should be **GRANTED** with respect to Plaintiffs' negligent infliction of emotional distress claim.

## III.   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Although Plaintiffs label their claim as one for negligent infliction of emotional distress, they allege BANA's conduct in handling their payments was extreme and outrageous, which suggests a claim for intentional infliction of emotional distress. (SAC 38, ¶ 14).  Because the substance of a claim governs over the nomenclature used by pro se litigants, this Court evaluates whether the same facts might support a claim for intentional infliction of emotional distress, and finds that they do not.  Castro v. United States, 540 U.S. 375, 381 (2003) ("Federal courts sometimes will ignore the legal label that a pro se litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category.").

Intentional infliction of emotional distress consists the following elements: "(1) [t]he conduct must be intentional or reckless; (2) [t]he conduct must be extreme and outrageous; (3) [t]here must be a causal connection between the wrongful conduct and the emotional distress; and (4) [t]he emotional distress must be severe."  Smith-Tyler v. Bank of Am., N.A., 992 F. Supp. 2d 1277, 1282 (N.D. Ga. 2014) (citing United Parcel Service v. Moore, 238 Ga. App. 376, 377 (1999)).  To be considered extreme and outrageous, the conduct must "go beyond all reasonable bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community."  Id.  Sharp or sloppy business practices, even if in breach of contract, are not generally considered as going beyond all reasonable bounds of decency."  United Parcel Service, 238 Ga. App. at 377.

Courts in this district have held that conduct similar to BANA's in this case does

31

not support a claim for intentional infliction of emotional distress, even in some cases where the property was lost to foreclosure. See Chung v. JPMorgan Chase Bank, N.A., 975 F. Supp. 2d 1333, 1350 (N.D. Ga. 2013) (granting summary judgment on an intentional infliction of emotional distress claim in favor of lender where borrower sent in payments without corresponding payment coupons, lender applied them to the wrong account, and foreclosed despite being notified of the error); Phillips v. Ocwen Loan Servicing, LLC, No. 1:12-CV-3861-WSD, 2013 WL 4854760, at *10 (N.D. Ga. Sept. 11, 2013) (dismissing intentional infliction of emotional distress claim where plaintiff alleged that misapplication of mortgage payments caused a default and the defendant published that plaintiff was in default); Spencer v. Nat'l City Mortg., No. 1:10-CV-3532-TCB, 2012 WL 13005362, at *7 (N.D. Ga. Feb. 27, 2012) (allegations that lender mishandled borrower's mortgage accounts, threatened to foreclose, and failed to correct errors are insufficient to show extreme and outrageous conduct at the motion to dismiss stage).

On the other hand, in McGinnis v. American Home Mortg. Servicing, Inc., 817 F.3d 1241 (11th Cir. 2016), the Eleventh Circuit upheld a jury verdict finding intentional infliction of emotional distress where the lender made an escrow error, refused to correct it many times, began returning the borrower's payments, frequently harassed the borrower by mail and phone, ultimately foreclosed on one property, and threatened foreclosure on the others. (Id. at 1247-1249, 1260). The Eleventh Circuit found that the "[lender's] awareness of its error rendered its opaqueness, unresponsiveness, and

32

belligerence—in pursuing foreclosure in a fairly short amount of time for a relatively small amount of money—extreme and outrageous as a matter of law. Id. at 1258-59. Although Plaintiff alleges many similar facts, there is neither an allegation of harassment nor was Plaintiffs' home foreclosed, which suggests Plaintiffs' claim against BANA is more closely analogous to the district court cases cited above. Accordingly, this Court recommends that BANA and BOFA's Motion to Dismiss be **GRANTED** with respect to Plaintiffs' intentional infliction of emotional distress claim against BANA.

## IV.   CONVERSION

Plaintiffs allege BANA misapplied their payments to escrow and that BANA has refused their demands to apply their payments to principal and interest. (SAC 38-39). Plaintiffs state that they are in default solely because of BANA's misapplication of payments. (SAC 14, 15, 17, ¶¶ 33, 37, 48). BANA argues a misapplication of funds under a contract does not state a case for conversion. (BANA and BOFA Motion to Dismiss 11, Doc. 32). BANA states that a letter attached to Plaintiffs' Second Amended Complaint shows that it refunded the escrow payments to Plaintiffs; however, the letter only offers to refund the money once the escrow account is brought current. (Id. at 3; Pls' Exs. 7, Doc. 27-1).

Conversion under Georgia law requires "an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation." Bo Phillips Co., Inc. V. R.L. King Props., 336

Ga. App. 705, 707 (2016) (citing <u>Maryland Cas. Ins. Co. v. Welchel</u>, 257 Ga. 259, 261 (1987)).  To establish a prima facie case for conversion, Plaintiffs must show: (1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property.  <u>Id.</u>

Once Plaintiffs sent their payments to BANA, the funds were under BANA's control.  Despite Plaintiffs' repeated requests that BANA apply the funds correctly to their benefit to satisfy their principal and interest payments, Plaintiffs state that BANA refused to do so.  (<u>Id.</u> 35, 39).  Plaintiffs have therefore sufficiently alleged a prima facia case for conversion.  <u>See</u> <u>Stroman v. Bank of America Corp.</u>, 852 F. Supp. 2d 1366, 1378-78 (N.D. Ga. 2012) (allegations that defendants converted funds by holding mortgage payments in a separate account instead of applying them to the loan balance were sufficient to survive a motion to dismiss); <u>James v. Litton Loan Servicing</u>, No. 4:09-CV-147 (CDL), 2011 WL 59737, at *11-12 (M.D. Ga. Nov. 5, 2012) (conversion claim survived summary judgment where borrower alleged that the mortgage company delayed proper application of payments in a way that increased the amount of interest and fees due); <u>Blackburn v. BAC Home Loans Servicing, LP</u>, 914 F. Supp.2d 1316, 1325-26 (M.D. Ga. 2012) (denying summary judgment for lender on conversion claim where borrower alleged that lender failed to properly credit payments to principal and interest and instead applied the funds to unexplained fees). <u>But see</u> <u>Jenkins v. BAC Home Loan Servicing</u>, 822 F. Supp.2d 1369, 1378 (M.D. Ga. 2011) (allegations that

defendants wrongfully converted Plaintiffs funds and misapplied escrow funds do not state a claim for conversion because they do not show defendants were in wrongful possession of the funds).

Plaintiffs' demands that BANA correctly apply their payments to satisfy their principal and interest payments is sufficient to state a "demand for return of the property." Plaintiffs' did not need to request that BANA return the property to them personally; a demand that the property be returned to its intended purpose is sufficient. See Blackburn, 914 F. Supp.2d at 1322 (plaintiff requested that all fees and charges collected on his mortgage account be credited back to him); Zimmerman v. Roche, No. 1:09-CV-0605-JEC, 2010 WL 11506545, at *7-9 (N.D. Ga. Sept. 20, 2010) (finding plaintiffs' demand that defendants issue the stock they paid for instead of return of their money was sufficient to support a conversion claim at the motion to dismiss stage); Johnson v. Citimortgage, Inc., 351 F. Supp.2d 1368, 1372 (N.D. Ga. 2004) (denying motion to dismiss conversion claim where defendant failed to apply payment to plaintiff's mortgage account and plaintiff demanded the payment be located and/or correctly applied). Cf. Chung v. JPMorgan Chase, N.A., 975 F. Supp.2d 1333, 1346-47 (N.D. Ga. 2013) (plaintiff did not ask defendant to return or otherwise reallocate the misapplied funds, but instead asked the defendant to "acknowledge" that the funds satisfied her payments); McGinnis v. American Home Mortg. Servicing, 2012 WL 426022, at *6 (M.D. Ga. Feb. 9, 2012) (conversion claim failed because the plaintiff did not request that the bank apply the funds to her account).

AO 72A
(Rev.8/82)

At this stage, Plaintiffs have alleged sufficient facts to state a plausible claim for conversion against BANA.  This Court recommends that BANA and BOFA's Motion to Dismiss Plaintiffs' conversion claim be **DENIED** as to BANA.

## V.   SPECIFIC PERFORMANCE

In the alternative, Plaintiffs request specific performance to enforce the terms of the Settlement Agreement, Loan Modification, and Security Deed.  (SAC 41, ¶ 2).  Plaintiffs, however, allege in their Second Amended Complaint that U.S. Bank currently owns their note and Selene holds the servicing rights associated with their mortgage.  (SAC 12, ¶¶ 24-25).  Therefore, BANA does not have an interest in Plaintiffs' loan any longer and does not have the ability to specifically perform by complying with the terms of their Settlement Agreement, Loan Modification, and Security Deed.  As a result, this claim fails for impossibility.  See Jolles v. Holiday Builders, Inc., 222 Ga. 258, 360 (1966) (finding that a company cannot be required to specifically perform a contract where it does not hold title to the land in question).  Accordingly, this Court recommends that BANA and BOFA's Motion to Dismiss Plaintiffs' claim for specific performance be **GRANTED** as to BANA.

## VI.   PUNITIVE DAMAGES

Plaintiffs allege BANA "willfully, and with malice and careless indifference to the consequences," misapplied their payments to escrow and suspense accounts.  (SAC 42, ¶¶ 4-5).  Plaintiffs contend that the willful breach, coupled with BANA's refusal to remedy the errors despite being notified many times by Plaintiffs, shows "willful

36

conduct, malice, fraud, wantonness, oppression, or the entire want of care which would raise the presumption of conscious indifference to the consequences." BANA and BOFA argue Plaintiffs cannot prevail on their claim for punitive damages because their underlying claims are subject to dismissal. (BANA and BOFA Motion to Dismiss 15, Doc. 32). Plaintiffs respond that dismissal of their claim for punitive damages would be premature. (Pls' Response to BANA and BOFA's Motion to Dismiss 11, Doc. 35).

Punitive damages may only be awarded in tort actions where "it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b)). A breach of contract, even a willful one, is not a tort that can support a claim for punitive damages. O.C.G.A. § 13-6-10; Tr. Co. Bank v. Citizens & S. Tr. Co., 260 Ga. 124, 126 (1990). Therefore, Plaintiffs' only surviving claim that may support punitive damages is conversion. Mwangi v. Fed. Nat'l Mortg. Ass'n, 162 F. Supp. 3d 1331, 1340 (N.D. Ga. 2016); Taylor v. Powertel, Inc., 250 Ga. App. 765, 768 (2001) (conversion is an intentional tort that can support punitive damages award). Plaintiffs' conversion claim stems from BANA's misapplication of payments to escrow and suspense accounts.

Plaintiffs have alleged that BANA willfully ignored the misapplication of their payments even after Plaintiffs raised the issue several times and requested corrective action, suggesting a conscious indifference to the consequences. (SAC 42-43, ¶¶ 4-6, 8). See Mwangi, 162 F. Supp. 3d at 1340-41 (denying summary judgment on punitive

37

damages claim because genuine disputes of fact remained about plaintiff's intentional tort claim and defendant continued to commit the intentional tort after being put on notice); <u>Chung v. JPMorgan Chase Bank, N.A.</u>, 975 F. Supp.2d 1333, 1350-51 (N.D. Ga. 2013) (denying summary judgment on punitive damages claim where defendant pursued foreclosure even though it knew the security deed had been marked paid); <u>Blackburn v. BAC Home Loans Servicing, LP</u>, 914 F. Supp. 2d 1316, 1330-31 (M.D. Ga. 2012) (denying summary judgment on punitive damages claim where plaintiffs maintained trespass and conversion claims and defendant failed to correct payment application error after being put on notice).

At this stage, Plaintiffs have adequately alleged a claim for punitive damages stemming from their conversion claim. Therefore, this Court recommends that BANA and BOFA's Motion to Dismiss be **DENIED** as to Plaintiffs' claim for punitive damages against BANA.

## VII.   FEES AND COSTS

Plaintiffs allege BANA has been stubbornly litigious and caused them unnecessary trouble and expense. (SAC 44). BANA contends that Plaintiffs cannot maintain their claim for attorney's fees under O.C.G.A. § 13-6-11 because it is a derivative claim and all of Plaintiffs' other claims fail. (BANA and BOFA's Motion to Dismiss 15, Doc. 32). BANA also observes that Plaintiffs are not entitled to attorney's fees because they are appearing pro se. (<u>Id.</u>). Plaintiffs respond that they are entitled to attorney's fees under the Settlement Agreement and that they hired a lawyer to negotiate with BANA in 2014.

(Pls' Resp. to BANA and BOFA's Motion to Dismiss 11, Doc. 35).

Whether Plaintiffs are entitled to attorney's fees under a contractual provision is separate from the issue of attorney's fees under O.C.G.A. § 13-6-11. A request for attorney's fees under O.C.G.A. § 13-6-11 is not a cause of action, but it allows recovery of litigation expenses as additional damages under certain circumstances. <u>Lamb v. Salvage Disposal of Ga.</u>, 244 Ga. App. 193, 196  (2000).  O.C.G.A. § 13-6-11 allows Plaintiffs to recover expenses of litigation where the defendant "acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." <u>Id.</u>  Further, litigation expenses cannot be recovered under the statute if the evidence shows that a genuine dispute existed, except in a case where there is bad faith.  <u>Bourke v. Webb</u>, 277 Ga. App. 749, 752 (2006).

In this case, it would be premature to dismiss Plaintiffs' claim for litigation expenses under O.C.G.A. § 13-6-11. Questions concerning bad faith, stubborn litigiousness, and unnecessary trouble and expense are generally questions for the trier of fact to decide. <u>Bourke</u>, 277 Ga. App. at 752; <u>Am. Med. Transp. Grp., Inc. v. Glo-An, Inc.</u>, 235 Ga. App. 464, 467 (1998) ("Only in the rare case where there was absolutely no evidence to support the award of expenses of litigation would the trial court be authorized to grant summary adjudication on such issues."). Plaintiffs' allegation that BANA ignored their efforts to resolve the problem prior to filing suit is sufficient to maintain a claim for litigation expenses at the motion to dismiss stage. (SAC 18, ¶¶ 52, 53 ).  <u>See Brookwood Funding, LLC v. Avant Credit Corp., Inc.</u>, No. 1:14-CV-2960-

39

SCJ, 2015 WL 11504556, at *7-8 (N.D. Ga. July 28, 2015) (denying a motion to dismiss claim for litigation expenses where Plaintiff sent at least two settlement demands prior to filing suit).

Separately, Plaintiffs may be able to recover litigation costs if they prevail on their breach of contract claim.  According to the Settlement Agreement attached to Plaintiffs' Second Amended Complaint: "[I]f any Party institutes legal proceedings over the enforcement of this Agreement or any provision of it, the prevailing party shall be entitled to recover from the losing Party its costs, including reasonable attorneys' fees, at both the trial and appellate levels.  (SAC Exs. 153, Doc. 27-1).  If Plaintiffs prevail on their contract claim, the attorney's fees attributable to enforcement of their contractual rights will be governed by the Settlement Agreement, and not O.C.G.A. § 13-6-11. Benchmark Builders, Inc. v. Schultz, 289 Ga. 329, 330 (2011) ("Where the contract provides for an award of fees, the legal principals governing an award under O.C.G.A. § 13-6-11 are inapplicable.").  If Plaintiffs prevail on contractual and non-contractual claims, their litigation expenses will need to be apportioned between the claims and the finder of fact will determine whether the standard for recovery under O.C.G.A. § 13-6-11 has been met.  See Wetherington v. Ameripath, Inc., No. 1:10-CV-1108-AT, 2013 WL 12097825, at *8 (N.D. Ga. Mar. 27, 2013).

Plaintiffs have adequately pled damages under O.C.G.A. § 13-6-11 at this stage of the case.  This Court recommends that BANA and BOFA's Motion to Dismiss Plaintiffs' request for litigation expenses under O.C.G.A. § 13-6-11 be **DENIED** as to

BANA.

## **SELENE AND U.S. BANK'S MOTION TO DISMISS**

## I.     **ATTEMPTED WRONGFUL FORECLOSURE AGAINST SELENE**

Plaintiffs bring an attempted wrongful foreclosure claim against Selene for scheduling their home for foreclosure when it did not have the authority to foreclose because it did not hold the Security Deed and the loan was not in default.  (SAC 44-45, ¶¶ 2-3, 6).  Plaintiffs also state that Selene had a duty to properly notify them of a foreclosure sale if one was scheduled.  (SAC 45, ¶ 4).  Plaintiffs claim they suffered "severe mental anguish" and "emotional distress" from the notices sent by McCalla on behalf of Selene.  (Id. at ¶ 8).  Selene contends in its Motion to Dismiss that Plaintiffs did not state the essential elements of attempted wrongful foreclosure.  (Selene and U.S. Bank's Motion to Dismiss 8-9, Doc 30).  Plaintiffs respond by arguing that publication was not required for a wrongful attempted foreclosure claim, that Selene could not foreclose because it did not hold the Security Deed or give statutory notice of the foreclosure sale, and that Selene owed them a duty under regulations promulgated by the Georgia Department of Banking and Finance.[9]  (Pls' Resp. to Selene and U.S. Bank's Motion to Dismiss 3-8, Doc. 34)**.**

---

[9] This Court will not consider new issues raised in response to a motion to dismiss.  Cobb v. JPMorgan Chase, LLC, No. 1:11-CV-2025-AT-JFK, 2011 WL 13221045, at *4 (N.D. Ga. Dec. 28, 2011) ("Plaintiff cannot raise new claims for the first time in a response brief, in lieu of seeking leave of court to amend the complaint."), adopted in relevant part by No. 1:11-CV-2025-AT, 2012 WL 13009236 (N.D. Ga. Mar. 30, 2012).

41

Plaintiffs' claim against Selene for wrongful attempted foreclosure fails to state the basic elements necessary to support the claim. Plaintiffs do not identify any statement Selene published that was "untrue and derogatory" about their financial conditions.[10] To the extent Plaintiffs are seeking to hold Selene liable for the statements of McCalla, this Court has already determined that Plaintiffs do not state a claim for wrongful attempted foreclosure stemming from McCalla's conduct and communications. As a result, this Court recommends that Selene and U.S. Bank's Motion to Dismiss be **GRANTED** as to Plaintiffs' claim for wrongful attempted foreclosure against Selene.

## II.    INFLICTION OF EMOTIONAL DISTRESS AGAINST SELENE

Plaintiffs bring a claim for infliction of emotional distress against Selene based on Selene's referring Plaintiffs' loan to McCalla for foreclosure when it did not hold the Security Deed and the loan was not in default. (SAC 46, ¶¶ 3-4). Although Plaintiffs do not specify whether the claim is one based on negligence or intentionality, the claim is insufficiently pled under either theory.

Plaintiffs cannot maintain a claim for negligent infliction of emotional distress against Selene. Georgia does not recognize an independent cause of action for "negligent infliction of emotional distress." Heard v. GMAC Mortg., LLC, No. 1:12-CV-4239-WSD, 2013 WL 12109765, at *9 (N.D. Ga. July 19, 2013) (quoting

---

[10] To prevail on a claim for wrongful attempted foreclosure, Plaintiffs must show that Selene "knowingly published an untrue and derogatory statement concerning their financial conditions and the plaintiffs sustained damages as a direct result of that statement." McGowan v. Homeward Residential, Inc., 500 F. App'x 882, 885 (11th Cir. 2012) (citing Aetna Fin. Co. v. Culpepper, 171 Ga. App. 315, 319 (1984)).

AO 72A
(Rev.8/82)

<u>Holbrook v. Stansell</u>, 254 Ga. App 553, 554 (2002)).  Because the Plaintiffs do not bring any claims rooted in negligence against BANA in this case, they cannot independently seek recovery of emotional distress damages on the basis of negligence.

To the extent Plaintiffs attempt to state a claim for negligence based on Selene's alleged inability to foreclose, they do not succeed in pleading the essential elements. Georgia law requires plaintiffs bringing a negligence claim to allege a non-contractual legal duty owed to them by defendants.    <u>Rampersad v. CitiMortgage</u>, No. 1:14-cv-01674-RWS, 2014 WL 12323681, at *4 (N.D. Ga. Nov. 5, 2014) (citing <u>Heston v. Lilly</u>, 248 Ga. App. 856, 857-58 (2001); <u>Greaves v. Bank of America</u>, No. 1:12-CV-02828-RWS, 2013 WL 1147531, at *4 (N.D. Ga. Mar. 19, 2013).  Because Plaintiffs do not identify any non-contractual duty Selene owed to them in their Second Amended Complaint, Plaintiffs have failed to state a claim for negligence.  <u>See</u> <u>Greaves</u>, 2013 WL 1147531, at *4 (dismissing a claim for negligent servicing because plaintiff did not allege a duty defendant owed to her outside of the security deed).

Neither have Plaintiffs sufficiently pled a claim for intentional infliction of emotional distress.  A claim of intentional infliction of emotional distress contains the following elements: "(1) [t]he conduct must be intentional or reckless; (2) [t]he conduct must be extreme and outrageous; (3) [t]here must be a causal connection between the wrongful conduct and the emotional distress; and (4) [t]he emotional distress must be severe."  <u>Smith-Tyler v. Bank of Am., N.A.</u>, 992 F. Supp. 2d 1277, 1282 (N.D. Ga. 2014) (citing <u>United Parcel Service v. Moore</u>, 238 Ga. App. 376, 377 (1999)).  To be

43

considered extreme and outrageous, the conduct must "go beyond all reasonable bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community." Id. Extreme and outrageous conduct generally does not include "mere insults, indignities, threats, annoyances, petty oppressions, or other vicissitudes of daily living." Id.

Even if Selene scheduled a foreclosure sale when it did not have the legal right to do so, such conduct does not sustain a claim for intentional infliction of emotional distress. See Smith-Tyler v. Bank, 992 F. Supp.2d at 1280 (initiation of foreclosure proceedings on a loan that had been paid off through a refinance did not support a claim for intentional infliction of emotional distress because sloppy business practices do not generally go beyond all reasonable bounds of decency); De Souza v. JP Morgan & Chase Co., No. 1:13-CV-2447-TWT, 2014 WL 1338762, at *5 (N.D. Ga. Apr. 2, 2014) (holding that the improper administration of the foreclosure process does not support a claim for intentional infliction of emotional distress); Blue View Corp. v. Bell, 298 Ga. App. 277, 278, 280 (2009) (no claim for intentional infliction of emotional distress will lie where a lender initiated and then withdrew foreclosure proceedings on a loan that had been paid in full).

Under either a negligent or intentional theory, Plaintiffs have failed to allege sufficient facts to support their claim for infliction of emotional distress. This Court recommends that Selene and U.S. Bank's Motion to Dismiss be **GRANTED** as to Plaintiffs' claim for infliction of emotional distress against Selene.

44

### III.   BREACH OF CONTRACT AGAINST SELENE

Plaintiffs allege Selene breached a duty in the Note and Loan Modification when it refused to accept Plaintiffs' principal and interest payments.  (SAC 47-48, ¶¶ 3-5).  Selene asserts that Plaintiffs' claim fails because they neither identify a provision that Selene breached, nor plausibly allege that Selene is a party to or assignee of any relevant contract.  (Selene and U.S. Bank's Motion to Dismiss 11-12, Doc. 30).  Plaintiffs respond that Selene admitted it held the Note and Security Deed in a court document filed in this case.  (Pls' Resp. to Selene and U.S. Bank's Motion to Dismiss 10-13, Doc. 33).

For Plaintiffs' breach of contract claim to survive a motion to dismiss, Plaintiffs must identify a specific contractual provision that has been breached.  Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C., 426 F. Supp.2d 1356, 1369 (N.D. Ga. 2006).  In Plaintiffs' Second Amended Complaint, they allege that, "[t]here exists a duty to accept payments that conform to the 2013 Loan Modification and the 2005 Note as modified," and that "Selene breached this duty in the Note and the Loan Modification" by rejecting timely and properly-tendered payments.  (SAC 47, ¶ 3).

Plaintiffs did not attach a copy of either the Note or Loan Modification to their Second Amended Complaint to support their allegations.  See Intellicig USA LLC v. CN Creative Ltd., No. 1-15-CV-01832-AT, 2016 WL 5402242, at *3 (N.D. Ga. July 13, 2016); (sparse allegations in a complaint, when viewed in conjunction with an attached contract, can raise a plausible claim for breach of contract).  This Court, however, takes

AO 72A
(Rev.8/82)

judicial notice of Plaintiffs' Security Deed filed in Cherokee County.[11]  Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1280 (11th Cir. 1990) (permitting consideration of public records at the motion to dismiss stage).  Plaintiffs' Security Deed contains a provision that governs application of payments, including a sentence in the first numbered item under Uniform Covenants:

> Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current.  Lender may accept any payment or partial payment insufficient to bring the loan current, without waiver of any rights hereunder or prejudice to its right to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted.[12]

The provision permits a lender to return payments insufficient to bring the loan current, suggesting that a lender would not be permitted to reject timely payments of the correct amount.  A court in this district reviewed an identical provision in Chung v. JP Morgan Chase Bank, N.A., 975 F. Supp.2d 1333 (N.D. Ga. 2013), and interpreted it to mean that a lender does not have discretion to reject timely payments of the correct amount.  Id. at 1344.  If the lender had unfettered discretion and was allowed to reject timely and complete payments, this provision would be superfluous.  Id.

    While the allegations supporting this claim are not as robust as they could be, this

---

[11] Taking judicial notice of a security deed does not convert the motion into one for summary judgment.  Universal Express, Inc. v. S.E.C., 177 F. App'x 52, 53 (11th Cir. 2006) (approving of district courts taking judicial notice of public records without converting a motion to dismiss into a motion for summary judgment).

[12] The Security Deed is also attached to McCalla's Motion to Dismiss.  (Doc. 31-2).

AO 72A
(Rev.8/82)

Court recognizes that pro se Plaintiffs must be afforded a reasonable amount of leniency when attempting to plead their claims. <u>Tannenbaum v. U.S.</u>, 148 F.3d 1262, 1263 (11th Cir. 1998) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."). This Court finds that Plaintiffs' allegations were sufficient to put Selene on notice of the specific breach – Selene's failure to accept conforming payments – even if Plaintiffs struggled to identify which of the documents comprising their mortgage contract contained the provision. <u>See Bates v. JPMorgan Chase</u>, No. 4:12-CV-43 (CDL), 2012 WL 3727534, at *5 (M.D. Ga. Aug. 27, 2012) (plaintiff's allegations that the bank breached a contract by failing to apply a payment, refusing to accept a payment, charging fees, violating certain HUD regulations incorporated into her contract, and improperly invoking the power of sale were sufficient to put the bank on notice of her claims even though the plaintiff did not attach the note or security deed to her complaint or identify the specific provisions breached).

Although Selene was not a party to the Note, Security Deed, Settlement Agreement, or Loan Modification, Plaintiffs allege Selene is servicing their mortgage loan, which is governed by the aforementioned contracts. <u>Stewart v. SunTrust Mortg., Inc.</u>, 331 Ga. App. 635, 638 (2015) ("Under Georgia law, a security deed which includes a power of sale is a contract and its provisions are controlling as to the rights of the parties thereto and their privies."). In addition, a letter from Selene attached to Plaintiff's Second Amended Complaint states that "[t]he servicing of your mortgage loan is

47

transferring from Bank of America, N.A. to Selene . . . [e]ffective 11/01/2016, please begin sending your mortgage payments to Selene . . .".  (Pls' Exs. 16-17, Doc. 27-1). Another letter from Selene identifies U.S. Bank as the "creditor/investor" and Selene as the "current servicer" with the "right to enforce the terms of the security deed and collect on the debt."  (Id. at 18).  If Selene acquired the right to enforce the terms of Plaintiffs' mortgage, it must do so while adhering to the terms of the contract.  See Gaylord v. Ocwen Loan Servicing, LLC, No. 2:12-CV-00087-WCO, 2013 WL 12291744, at *14 (N.D. Ga. Mar. 27, 2013) (permitting a breach of contract claim against a loan servicer to survive a motion to dismiss); Blackburn v. BAC Home Loans Servicing,LP, No. 4:11-CV-39 (CDL) 2012 WL 4049433, at *8-9 (M.D. Ga. Sept. 13, 2012) (declining to dismiss a breach of contract claim against a loan servicer where plaintiffs alleged the loan was assigned to BAC for servicing).  At this stage, Plaintiffs have sufficiently alleged that Selene has an interest in their mortgage loan and is therefore required to accept payments under the terms of the Security Deed.  Therefore, this Court recommends that Selene and U.S. Bank's Motion to Dismiss be **DENIED** as to Plaintiffs' breach of contract claim against Selene.

## IV.    FEES AND COSTS AGAINST SELENE

A request for attorneys fees under O.C.G.A. § 13-6-11 is not a cause of action, but it allows recovery of litigation expenses as additional damages under certain circumstances.  Lamb v. Salvage Disposal of Ga., 244 Ga. App. 193, 196  (2000). O.C.G.A. § 13-6-11 allows Plaintiffs to recover expenses of litigation where the

defendant "acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." Id.  Further, litigation expenses cannot be recovered under the statute if the evidence shows that a genuine dispute existed, except in a case where there is bad faith.  Bourke v. Webb, 277 Ga. App. 749, 752 (2006).

In this case, it would be premature to dismiss Plaintiffs' claim for litigation expenses under O.C.G.A. § 13-6-11. Questions concerning bad faith, stubborn litigiousness, and unnecessary trouble and expense are generally questions for the trier of fact to decide.  Bourke, 277 Ga. App. at 752; Am. Med. Transp. Grp., Inc. v. Glo-An, Inc., 235 Ga. App. 464, 467 (1998) ("Only in the rare case where there was absolutely no evidence to support the award of expenses of litigation would the trial court be authorized to grant summary adjudication on such issues.").  Plaintiffs' allegation that Selene ignored their attempt to resolve the problem prior to filing suit is sufficient to maintain a claim for litigation expenses at the motion to dismiss stage.  (SAC 12-13, 18, ¶¶ 28-29, 54).  See Brookwood Funding, LLC v. Avant Credit Corp., Inc., No. 1:14-CV-2960-SCJ, 2015 WL 11504556, at *7-8 (N.D. Ga. July 28, 2015) (denying a motion to dismiss claim for litigation expenses where Plaintiff sent at least two settlement demands prior to filing suit). This Court recommends that Selene and U.S. Bank's Motion to Dismiss be **DENIED** as to Plaintiffs' request for litigation expenses under O.C.G.A. § 13-6-11 against Selene.

## V.   BREACH OF CONTRACT AGAINST U.S. BANK

Plaintiffs allege that U.S. Bank has a beneficial interest in Plaintiffs' Note, that

"[t]here is a contractual duty to accept payments under the Note," and U.S. Bank has refused to accept Plaintiffs' payments.  (SAC 50, ¶¶ 4-6).  U.S. Bank moves to dismiss this claim, arguing Plaintiffs did not identify a specific provision breached, and that the Security Deed language permits them to reject payments.  (Selene and U.S. Bank Motion to Dismiss 14, Doc. 30).

For Plaintiffs' breach of contract claim to survive a motion to dismiss, Plaintiffs must identify a specific contractual provision that has been breached.  Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C., 426 F. Supp.2d 1356, 1369 (N.D. Ga. 2006). It is clear that Plaintiffs believe the breach to be U.S. Bank's failure to accept their payments.  (SAC 47, ¶¶ 2-4).  In Plaintiffs' Second Amended Complaint, they generally allege that U.S. Bank owns the Note and therefore must comply with the Settlement Agreement, Loan Modification, and Security Deed.  (SAC 12, 24, 47, ¶¶ 3, 19, 61).

As it did when evaluating Plaintiffs' breach of contract claim against Selene, this Court takes judicial notice of Plaintiffs' Security Deed filed in Cherokee County and subsequent assignments.[13]  Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1280 (11th Cir.1990) (permitting consideration of public records at the motion to dismiss stage). Plaintiffs' Security Deed contains a provision that governs application of payments, including a sentence in the first numbered item under Uniform Covenants:

---

[13] Taking judicial notice of a security deed does not convert the motion into one for summary judgment.  Universal Express, Inc. v. S.E.C., 177 F. App'x 52, 53 (11th Cir. 2006) (approving of district courts taking judicial notice of public records without converting a motion to dismiss into a motion for summary judgment).

> Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current.  Lender may accept any payment or partial payment insufficient to bring the loan current, without waiver of any rights hereunder or prejudice to its right to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted.[14]

The provision permits a lender to return payments insufficient to bring the loan current, suggesting that a lender would not be permitted to reject timely payments of the correct amount.  A court in this district reviewed an identical provision in Chung v. JP Morgan Chase Bank, N.A., 975 F. Supp.2d 1333 (N.D. Ga. 2013), and interpreted it to mean that a lender does not have discretion to reject timely payments of the correct amount.  Id. at 1344.  If the lender had unfettered discretion was allowed to reject timely and complete payments, this provision would be superfluous.  Id.

While the allegations supporting this claim are not as robust as they could be, this Court recognizes that pro se Plaintiffs must be afforded a reasonable amount of leniency when attempting to plead their claims.  Tannenbaum v. U.S., 148 F.3d 1262, 1263 (11th Cir. 1998) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.").  This Court finds that Plaintiffs' allegations were sufficient to put U.S. Bank on notice of the specific breach – the failure to accept conforming payments – even if Plaintiffs struggled to identify which of their mortgage documents contained the applicable provision.  See Bates v.

---

[14] The Security Deed and assignments are also attached to McCalla's Motion to Dismiss.  (Doc. 31-2 and Doc. 31-4).

JPMorgan Chase, No. 4:12-CV-43 (CDL), 2012 WL 3727534, at *5 (M.D. Ga. Aug. 27, 2012) (plaintiff's allegations that the bank breached a contract by failing to apply a payment, refusing to accept a payment, charging fees, violating certain HUD regulations incorporated into her contract, and improperly invoking the power of sale were sufficient to put the bank on notice of her claims even though the plaintiff did not attach the note or security deed to her complaint or identify the specific provisions breached).

Although U.S. Bank was not a party to the Note, Security Deed, Settlement Agreement, or Loan Modification, Plaintiffs allege U.S. Bank is the owner of Plaintiffs' Note, and public records reveal that U.S. Bank also has a recorded assignment of the Security Deed.  As a result, U.S. Bank is bound by the terms of the mortgage contract.[15]  Stewart v. SunTrust Mortg., Inc., 331 Ga. App. 635, 638 (2015) ("Under Georgia law, a security deed which includes a power of sale is a contract and its provisions are controlling as to the rights of the parties thereto and their privies.").  When U.S. Bank bought the Note and took assignment of Plaintiffs' Security Deed, it stepped into the shoes of BANA and is bound by the same contracts.  Goodgame v. Countrywide Home Loans, Inc., No. 1:16-CV-0634-LMM-JFK, 2016 WL 10988802, at *10 (N.D. Ga. Dec. 16, 2016), adopted by 2017 WL 8186691 (N.D. Ga. Jan. 6, 2017); Bowen v. Kicklighter, 124 Ga. App. 82, 85 (1971) ("A transferee of the security deed and the indebtedness secured

---

[15] In a letter from Selene that Plaintiffs attached to their Second Amended Complaint, Selene states that "[t]he servicing of your mortgage loan is transferring from Bank of America, N.A. to Selene . . . [e]ffective 11/01/2016, please begin sending your mortgage payments to Selene . . .".  (Pls' Exs. 16-17, Doc. 27-1).

thereby steps into the shoes of the grantee therein, and is generally entitled to the same rights and priorities under the deed."). Therefore, this Court recommends that Selene and U.S. Bank's Motion to Dismiss be **DENIED** as to Plaintiffs' breach of contract claim against U.S. Bank.

## VI.   FEES AND COSTS AGAINST U.S. BANK

A request for attorneys fees under O.C.G.A. § 13-6-11 is not a cause of action, but it allows recovery of litigation expenses as additional damages under certain circumstances. Lamb v. Salvage Disposal of Ga., 244 Ga. App. 193, 196 (2000). O.C.G.A. § 13-6-11 allows Plaintiffs to recover expenses of litigation where the defendant "acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." Id. Further, litigation expenses cannot be recovered under the statute if the evidence shows that a genuine dispute existed, except in a case where there is bad faith. Bourke v. Webb, 277 Ga. App. 749, 752 (2006).

Questions concerning bad faith, stubborn litigiousness, and unnecessary trouble and expense are generally questions for the trier of fact to decide. Bourke, 277 Ga. App. at 752; Am. Med. Transp. Grp., Inc. v. Glo-An, Inc., 235 Ga. App. 464, 467 (1998) ("Only in the rare case where there was absolutely no evidence to support the award of expenses of litigation would the trial court be authorized to grant summary adjudication on such issues."). Plaintiffs do not allege any facts suggesting that U.S. Bank acted in a stubborn or litigious manner; Plaintiffs did not allege that they ever communicated with U.S. Bank about the issues they raise in this lawsuit prior to filing the case. Because

53

there are no facts in the Second Amended Complaint to support an award of litigation expenses against U.S. Bank, dismissal of Plaintiffs' request for litigation expenses against U.S. Bank is appropriate.  This Court recommends that Selene and U.S. Bank's Motion to Dismiss be **GRANTED** as to Plaintiffs' request for expenses under O.C.G.A. § 13-6-11 against U.S. Bank.

## **CONCLUSION**

For the reasons discussed above, McCalla's Motion to Dismiss Plaintiffs' Second Amended Complaint should be **GRANTED** (Doc. 31), BANA and BOFA's Motion to Dismiss Plaintiffs' Second Amended Complaint should be **GRANTED IN PART AND DENIED IN PART** (Doc. 32), and Selene and U.S. Bank's Motion to Dismiss Plaintiffs' Second Amended Complaint should be **GRANTED IN PART AND DENIED IN PART** (Doc. 30).

**SO ORDERED AND REPORTED AND RECOMMENDED**, this ___27___ day of August, 2018.

/s/ Linda T. Walker_____
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

54